IN ERROR.
••••••
ALBANY,
January, 1819.

SEAMAN
v.
WADDINGTON.

EDMUND SEAMAN, ROBERT SEAMAN, THOMAS, TOBIAS, and
        BILLOPP B. SEAMAN, Plaintiffs in Error,
                        *against*
JOSHUA WADDINGTON, who is impleaded with HENRY WAD-
        DINGTON, Defendant in Error.

*Same points* as decided in the last case.

THE plaintiffs in error brought an action of *assumpsit* against the defendant in error, in the Supreme Court, to recover a balance of 18,359*l*. 8*s*. 3*d*. sterling, with the interest thereon from the 1st of *January*, 1814, as stated in an account current, signed by *H. W.* with the name of *H. W. &
Co.* The plaintiffs in error were debited on the 8th of *February*, 1813, with cash, 1,847*l*. sterling, and credited in *September*, 1812, and the 1st of *January*, 1813, with bills amounting to near 19,000 pounds sterling, and with cash and interest to the 1st of *January*, 1814, making the whole amount 20,305*l*. 8*s*. 3*d*. sterling.

The cause was tried at the *New-York* sittings, the 11th of *December*, 1816, before Mr. J. *Van Ness*, and the evidence, stated in the last case of *Griswolds* against the same defendant, of the two cartels with letters for *England;* the petition and affidavits of the defendant in the District Court; the purchase of bills in *England*, by the government of the *United States*, was introduced. The plaintiffs also gave in evidence an advertisement, inserted in the *New-York Evening Post* and *New-York Gazette*, the 15th of *November*, 1814, signed by the defendant, J. *Waddington*, and *Robert S. Newby*, stating that the copartnership heretofore existing at *New-York*, between the subscribers and *Henry Waddington*, of *London*, under the firm of *J. W. & Co.* and that at *London*, between *H. W. & J. W.* under the firm of *H. W. & Co.* expired by their respective limitations, on the 1st of *January*, 1813.

The defendant proved, by the answer of *E. S.*, one of the plaintiffs, to a bill of discovery in Chancery, filed by the defendant, that between the 3d of *August*, 1812, and the 20th of *September*, he and his copartners, trading in *New-York*, re-

mitted to *H. W. & Co.* of *London,* two *British* government bills, drawn on the Lords of the Treasury, amounting to 3,000*l.* sterling; one on the Commissioners of the Treasury, for 600*l.* sterling, and several bills on individuals, amounting, in the whole, to above 20,000 pounds; and that some of the bills were remitted from *Lisbon.*

The defendant also proved, that a bill of exchange for 10,000*l.* sterling, dated *New-York, December* 8, 1814, and credited in the account current, as of the 1st of *January,* 1817, was procured by the proceeds of the ship *Othello's* cargo sold at *Lisbon.* That the ship sailed from the *United States,* during the war with *Great Britain,* and the supercargo had instructions from the owners of ship and cargo to sell the cargo, and invest the proceeds in bills of exchange on *England,* and to remit such bills to *H. W. & Co.* of *London,* to be passed to the credit of the plaintiffs in error. The ship sailed on the voyage with a *British license* on board; and was cleared for the voyage on the 4th of *November,* 1812. By an *endorsement* made on the *license,* dated the 24th of *February,* 1813, signed by the *British* ambassador at *Lisbon,* the ship was protected from *British* cruisers, while returning home to the *United States* with a cargo of salt. Another *item* in the account current, of 350*l.* sterling, was also procured and remitted to the plaintiffs in error, from the proceeds of the *Othello's* cargo. The *Othello* had made a previous voyage to *Lisbon,* with a similar *license,* after the declaration of war against *Great Britain;* and two bills of exchange of 1,988*l.* 6*s.* 7*d.* sterling, and 3,000*l.* sterling, were procured and remitted from the proceeds of the freight and cargo of the first voyage, under similar instructions given to the supercargo.

It appeared, from an entry in the waste book of the plaintiffs in error, in *October,* 1814, and from a letter addressed by them, under the firm of *E. Seaman, Son, & Co.* to *Henry Waddington & Co.,* dated the 8th of *October,* 1814, that the plaintiffs had transferred their funds in the hands of *H. W. & Co.* to *Edmund Seaman,* and they request *H. W. & Co.* to hold the same, subject to his orders, debiting their account with the amount and interest to the 1st of *January,* 1815, and placing the same to his credit.

IN ERROR.
.......
ALBANY,
January, 1819.
~~~~~
SEAMAN
v.
WADDINGTON.

The jury, under the direction of Mr. Justice *Van Ness,* before whom the cause was tried, found a verdict for the defendant. The plaintiffs in error tendered a bill of exceptions to the opinion and charge of the judge, which, pursuant to the statute, was brought before the court below, who gave judgment thereon in favour of the defendant in error. To reverse which judgment the present writ of error was brought.

The plaintiffs in error alleged, that the judgment ought to be reversed :

1. Because the partnership proved to have existed between *J. & H. W.* in *London*, before the late war between the *United States* and *Great Britain*, was not dissolved or terminated by that war, or otherwise, previous to the accruing of the plaintiffs' right of action.

2. Because there was no illegality in the contract or transactions in which the action is founded ; or, at least, none such as can defeat the right of recovery.

3. Because that proper and legal evidence offered by the plaintiffs on that trial was rejected by the judge.

4. Because, the judgment of the Supreme Court is contrary to law.

The defendant in error insisted that the judgment of the Supreme Court ought to be affirmed :

1. Because the declaration of war by the *United States* against the king of *Great Britain* worked a dissolution of the copartnership then existing between *J. W.* and *H. W.*

2. Because, if the declaration of war did not work an absolute and entire dissolution of the said copartnerships, it operated in law, at least, to suspend it, as to all commercial dealings and transactions carried on by either party, during the continuance of war.

3. Because, the copartnership having expired by efflux of time, during the continuance of the war, and the defendant, *J. W.*, being resident in the *United States*, no notice of the expiration of the partnership was necessary on his part.

4. Because, the balance of account, claimed by the plaintiffs, has grown out of a trade and intercourse unlawfully carried on by them, with the enemy, during the existence of the late war ; and no action can be lawfully sustained in the

courts of this country to enforce a claim founded on such unlawful dealing, especially to charge an innocent party not concerned in the illegal traffick.

5. That the balance of account having been assigned and transferred to the separate account and credit of *Edmund Seaman*, the plaintiffs in error have no right of action against the defendants; there being, what is termed in the civil law, a *novation* of the contract.

*Griffin* and *Henry*, for the plaintiffs in error.

*Hoffman* and *Emmett*, for the defendant in error.

The different points raised in the cause were most ably argued by the counsel; but as the principal question, as to the illegality of the contract, on which the opinion of the court turned, has been already discussed and considered so much at large, in the case of *Griswolds* v. *Waddington*, it is unnecessary to state the arguments of the counsel.

THE CHANCELLOR. This case involves the same questions, as to the lawfulness of trading with an enemy in time of war, and as to the existence of commercial partnerships between the subjects of the two hostile states, as those already discussed and decided in the case of *Griswolds* v. *Waddington*. It would, therefore, be unnecessary and useless to repeat the same arguments.

But in this case the trading with the enemy was more offensive, and more aggravated in its circumstances, and is liable to more severe animadversion.

In this case the plaintiffs admit, that within the first six months after the commencement of the war, they remitted to *England*, in private and in *British* government bills, to the amount of upwards of 20,000*l.* sterling. The object of this was to transfer so much of the capital of the plaintiffs, in time of war, from their own country, to be deposited on interest in a mercantile house in *London*; and it must have been done with the design, either of aiding and assisting the enemy, by a loan to that extent, or placing their funds under what they deemed better protection in the enemy's country

than in their own.    The house they selected having been concerned in extensive speculations during the war, and having probably employed those very funds in trade or enterprises subservient to the interest and views of the enemy, unfortunately became bankrupt just at the conclusion of the war.    It now suits the convenience of the plaintiffs to call upon our courts to assist them to recover this money, and, consequently, to charge this loss upon a citizen of *New-York,* on the ground that the alien enemy had a right to bind him as a partner.

But this is not the whole view of the case.    The principal part of the money was the proceeds of the two cargoes sent by the plaintiffs, in the ship *Othello,* to *Lisbon,* during the first year of the war, under a *British* license, and the same ship was protected during her return voyage, by a fresh *British* license, procured at *Lisbon.*    The plaintiffs, by such conduct, whatever may have been their intention, laboured most faithfully and effectually, during the first year of the war, to impair the resources and to diminish the trade of the one country, and to increase the resources and promote the commerce of the other.    If such a trading as this be lawful in war, then I should think, that any one or more of these *United States* might, by law, have ratified such a commerce with the enemy, in spite of the declaration of Congress.    I cannot conceive of a more criminal and injurious breach of allegiance, short of the crime of treason ; and I think it is utterly inadmissible that these plaintiffs should come here and receive the aid of this court to sanction such dealings and enforce such contracts.

On this single ground of the illegality of the trade, and of the void nature of the contract, I am of opinion that the judgment of the Supreme Court ought to be affirmed.

*March* 10.    This being the opinion of the whole court, (LIVINGSTON, Senator, dissenting,) It was thereupon ORDERED and adjudged, that the judgment of the Supreme Court be affirmed, &c.

                              Judgment of affirmance.